(December 21, 1893.)

## WILLMAN v. FRIEDMAN.

[35 Pac. 37.]

EXECUTORY CONTRACT ON SALE OF REALTY—VENDOR'S LIEN—ATTACHMENT.—Where W. sold to F. certain real estate upon executory contract, F. going into possession, but title remaining in W. until purchase price is paid by vendee, vendor has such a lien as bars him from resorting to attachment, under the statutes of Idaho, for the recovery of the unpaid portion of purchase price.

SECURED AND UNSECURED CLAIMS CANNOT BE UNITED IN ATTACHMENT SUIT.—Where plaintiff had procured by assignment, a few days prior to commencing his suit, two small claims against defendant, which claims were unsecured, the plaintiff cannot, by uniting such claims with his secured claims in his complaint, secure the benefit of the attachment laws for any portion of the claims sued for.

UNDERTAKINGS ON ATTACHMENT—WHAT CLERK SHOULD REQUIRE.—The attachment law of this state vests a large discretion in the clerk of the district court in the matter of taking undertakings, and in the exercise of that discretion it is advisable that the clerk should always require an undertaking at least equal to the amount stated in the affidavit.

(Syllabus by the court.)

APPEAL from order of District Judge, Alturas County.

A. F. Montadon (J. J. Burt, of Counsel), for Appellant.

A copy of the cross-complaint had to be served upon the plaintiff personally within the territory or the state of Idaho; and there was no such appearance on the part of the plaintiff in such cross-action as to waive such service and confer jur-

isdiction upon the court as to such cross-action.   (Rev. Stats.,
sec. 4184; *Connor v. Winter,* 7 Ind. 523; *Lovejoy v. Robinson,*
8 Ind. 400; *Slayback v. Jones,* 9 Ind. 470; *Harris v. Rivers,*
53 Ind. 216; *City of Lewiston v. Booth,* ante, p. 692, 34 Pac.
809; *Heilbron v. Canal Co.,* 76 Cal. 15, 17 Pac. 933; *McDougal
v. McGuire,* 35 Cal. 281, 95 Am. Dec. 98; *Hembrook v. Stark,*
53 Mo. 588; *Branch of the State Bank v. Morris,* 13 Iowa, 136;
*Wagenheim v. Graham,* 39 Cal. 172; *Jeffreys v. Hancock,* 57
Cal. 646; *Hoffman v. Remnant,* 72 Cal. 1, 12 Pac. 804; *Clark
v. Taylor,* 91 Cal. 554, 27 Pac. 860.)   It is not for the person
objecting to show that the statutory conditions do not exist,.
but it is for the other side to affirmatively show that they do.
exist.   (*Earle v. McVeigh,* 91 U. S. 503; *Settlemeir v. Sulli-
van,* 97 U. S. 160.)   And the jurisdictional facts must appear
upon the record.   (*Thatcher v. Powell,* 6 Wheat. 119; *Galpin
v. Page,* 18 Wall. 350; *United States v. Clark,* 8 Pet. 436;
*Pennoyer v. Neff,* 95 U. S. 727; *Hart v. Sansom,* 110 U. S.
151, 3 Sup. Ct. Rep. 586.)   The bringing of the original ac-
tion by plaintiff was not a submission by him to the jurisdic-
tion of the court as to anything beyond the limits of that ac-
tion, and the cross-action being an original and independent
action, separate and distinct from the main action, and defend-
ant, in the cross-action, must be brought into the court as in
a main action, or, at least, by a service of the cross-complaint
upon him personally within the territorial jurisdiction of the
state.   (Idaho Rev. Stats., sec. 4188; *White v. Patton,* 87 Cal.
151, 25 Pac. 270; *Vannerson v. Leveritt,* 31 Fed. 276; *Carson
etc. Lumber Co. v. Holtclon,* 39 Fed. 578; *Wolcot v. Watson,*
46 Fed. 529; *Smith v. Woolfolk,* 115 U. S. 143, 5 Sup. Ct.
Rep. 1177.)   Appearance must be upon the record, and under
our statute is only by demurrer, answer or written notice of ap-
pearance.   (Rev. Stats., sec. 4892; *Harkness v. Hyde,* 98 U.
S. 476; *S. P. Co. v. Denton,* 146 U. S. 206, 13 Sup. Ct. Rep.
44; *Roberts v. Lewis,* 144 U. S. 657, 12 Sup. Ct. Rep. 781.)

   Texas Angel, P. M. Bruner and Arthur Brown, for Respond-
ent.

   The law of this case is settled by the proceedings already
had in it, which became and is known as the law of the case.
When a cause has been determined in a higher court upon cer-

tain principles, those principles are supposed to continue throughout the case without re-examination as to their correctness or incorrectness. The fact that the attachment was improperly issued without foundation and without right was determined in the first adjudication in this court. The cases cited by counsel fail to touch or give any hint or color to the enormous declaration of the rights which is claimed in the brief. The case of *Waugenheim v. Graham,* 39 Cal. 175 et seq., is not *dictum.* It was laid down as law long before the adoption of the Idaho code, and when the Idaho code was adopted the construction placed upon it by this case was adopted with it.

HUSTON, C. J.—This is an appeal from an order of the district court of Alturas county discharging an attachment. The plaintiff filed his complaint in the district court, which complaint contained several causes of action, separately stated. The first cause of action, as set forth in the complaint, arose upon a promissory note made by the defendant, and (as is alleged in the complaint) "one Myers Cohn also wrote his name thereon, as surety, thus: 'Myers Cohn.'" It is further alleged, in regard to said note, "that Fred. J. Keisel & Co. indorsed the same by writing and indorsing their names on the back thereof, thus: 'Fred. J. Keisel & Co.'" Then follows, in the complaint, the allegation of three other causes of action upon three several notes for the sum of $900 each, executed and delivered by defendant to plaintiff, and also a further allegation of the cause of action upon a contract alleged to have been entered into by plaintiff and defendant on the fifteenth day of July, 1891, by the terms of which, it is alleged, defendant agreed to pay plaintiff the interest on the three notes mentioned in the second, third, and fourth causes of action set forth in the complaint, "and also on two other notes for $900 each— one to become due May 15, 1893, and the other July 15, 1893." Then follows in said complaint, for a sixth cause of action, an allegation of an indebtedness due from defendant to the firm of Wheaton & Lurhs for the sum of sixty-one dollars and thirty cents, for merchandise sold and delivered by said firm to defendant, and which claim is alleged to have been assigned to the plaintiff on May 3, 1893. Then follows another—the

seventh and last cause of action alleged in the complaint—
which is a claim due from defendant to the California Powder
Works, for the sum of $206.55. This last claim was assigned
to plaintiff on May 4, 1893. This suit was commenced May
10, 1892. Affidavit for attachment was filed May 10, 1893.
Undertaking on attachment was filed May 10, 1893, and writ
issued on the same day. On May 16, 1893, motion to discharge
attachment was made. On May 17, 1893, hearing was had,
on motion to discharge attachment, before district judge at
chambers, and on this same day the judge made his order dis-
charging attachment, from which order this appeal is taken.

It will be seen from the record that only the first cause of
action had accrued when the suit was instituted. The affidavit
for attachment bears date May 10, 1893. Section 4302 of the
Revised Statutes of Idaho provides "that the plaintiff, at the
time of issuing the summons, or at any time afterward, may
have the property of the defendant attached," etc. We cannot,
therefore, infer that there is any mistake as to dates, and can-
not refrain from admonishing attorneys to be more careful in
the preparation of their appeals than is evidenced in this one.
It does not appear from the record upon what papers, records,
or proofs the motion to discharge attachment was heard before
the district judge. There is no evidence before us that any of
the papers appearing in the record were before the district
judge on the hearing of the motion. There can be no excuse
for such laches. The order of the district judge discharging
the attachment is based upon the ground that the affidavit for
attachment is not true, in that said affidavit states, as required
by statute, that the alleged indebtedness from defendant to
plaintiff, for which attachment is sought, "was not secured by
any mortgage or lien upon real or personal property, or any
pledge of personal property; whereas, in truth and in fact, it
appearing to my satisfaction that the greater portion of said
indebtedness was secured by a subsisting lien upon real estate,"
etc.

There appears in the record what is denominated a "mem-
oranda of agreement," made and entered into between plaintiff
and defendant on the thirty-first day of July, 1891, by the
terms of which plaintiff, for a consideration therein expressed,

agrees to sell and convey to defendant certain real estate in the town of Hailey, Alturas county, Idaho, for the sum of $4,500, to be paid in five installments of $900 each, at various dates, with interest. It is further agreed that the title papers for said real estate shall be deposited in escrow with the First National Bank of Hailey, Idaho, to be delivered by said bank to said defendant upon and after performance by him of the matters and things by him to be performed, as provided in said memoranda of agreement. The five promissory notes for $900 each, mentioned and set forth in the complaint, were the consideration for said real estate. Under this agreement, defendant went into possession of the real estate described in the complaint. The question, and about the only one, discussed in this case, is, "Does the reservation of title in the vendor create such a lien in his favor as to disbar him from invoking the remedy by attachment under our statute?" Why was the title to this real estate reserved in the plaintiff? Defendant went into possession under the contract, and made partial payments of the purchase price. If the reservation of title in the plaintiff was not for the purpose of security, we cannot imagine what it was for. If it was not a "vendor's lien," in the strict sense of that term, it was security by lien upon real estate, and, while it continued to exist, constituted a bar to the issuance of an attachment, under the provisions of section 4303 of the Revised Statutes of Idaho, "unless it had, without any act of the plaintiff, or the person to whom the security was given, become valueless." (*Gessner v. Palmateer,* 89 Cal. 89, 24 Pac. 608, 26 Pac. 789.) The affidavit for attachment being untrue, in that it stated that "the payment of the debt was not secured by any mortgage, lien, or pledge upon real or personal property," its verity is not re-established by the fact that plaintiff had included in his action two small claims assigned to him but a few days before the commencement of suit, which claims were unsecured. It was not to serve such purposes that the very latitudinous attachment law of this state was enacted. (*Murphy v. Montandon,* ante, p. 325, 35 Am. St. Rep. 279, 29 Pac. 851.)

There is another matter, in connection with this case, to which we desire to call attention. Section 4304 of the Revised

Statutes of this state provides that "before issuing the writ [of attachment], the clerk must require a written undertaking on the part of the plaintiff, in a sum not less than $200, and not exceeding the amount claimed by the plaintiff," etc. This invests the clerk with a discretion in fixing the amount of the undertaking to a minimum of $200, and a maximum fixed by the amount of the claim sued for. The case under consideration is a striking illustration of the disastrous results that are liable to ensue from placing such a discretion in the hands of a clerk. In the case at bar, the amount sued for, as shown by the affidavit for attachment, was the sum of $4,661.82. The affidavit of the defendant in support of his motion to discharge the attachment contains the following statement: "Deponent further says that the property attached consists of a stock of goods with which defendant had been engaged in business for many years, now exceeding $20,000, and has built thereon credit; that his business has exceeded $45,000 per year for over two years past; that the effect of this attachment is to ruin the credit, business, and business standing of this defendant; that the value of said business far exceeds the amount involved in this litigation." The undertaking was for $300. Comment is unnecessary. So long as the statute remains as it now is, we think a safe exercise of discretion by the clerk should in all cases require an undertaking not less than the amount of the claim sued for, as shown by the affidavit, when the sum sued for is over $200. Order and judgment of district court affirmed, with cost to respondent.

Morgan and Sullivan, JJ., concur.