(June 10, 1903.)

## MARK MEANS TRANSFER COMPANY v. MACKINZIE.
### [73 Pac. 135.]

ATTACHMENT—MOTION TO DISCHARGE WILL BE SUSTAINED WHEN.— Where it is shown that the suit is based upon a promissory note providing that the express condition of the sale and purchase of the goods for which the note was given is such that the title, ownership or possession does not pass until the note and interest is paid in full, and that the payee has full power to declare the note due and take possession of the goods at any time he may deem himself insecure, even before the specified maturity of same, unless it is shown by the affidavit that the security is beyond his reach or has become valueless through no fault of his, attachment cannot be maintained upon action for purchase price.

(Syllabus by the court.)

ORDER on motion to discharge attachment. Sustained.

The facts are stated in the opinion.

McFarland & McFarland, for Appellants.

The affidavit of Mark Means and James Hayes clearly shows that at the time of the sale the property was delivered to respondent, and that he, respondent, has had possession thereof ever since, and that appellants have not at any time thereafter been in, or claimed possession thereof. This affidavit is uncontradicted. If appellants did not retain possession, how could there be a pledge? Section 3410 of the Revised Statutes defines a pledge: "The lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee or to a pledge-holder." (Idaho Rev. Stats., sec. 3411.) The note declared upon in this action is not a chattel mortgage, because it is not acknowledged or verified as required by law. (Laws 1899, p. 121.) It is not a contract for a pledge, because possession of the property was not delivered to or retained by appellants. (Idaho Rev. Stats., secs. 3410, 3411.) A vendor's lien will not attach to personal property for its price, unless the vendor retains possession, and the property is in his possession when the price becomes payable. (Idaho Rev. Stats., sec. 3443.) A lien or pledge must be of a fixed, determinate character, capable of being enforced with certainty, and dependent on no conditions. (*Porter v. Brooks,* 35 Cal. 199; 1 Jones on Liens, secs. 3-5.) The above doctrine is upheld by the following cases: *Roberts v. Jacks,* 31 Ark. 597, 25 Am. Rep. 584; *Barnett v. Mason,* 7 Ark. 253; *Waddell v. Carlock,* 41 Ark. 523; *Wenz v. McBride,* 20 Colo. 195, 36 Pac. 1105; *Glascock v. Lemp,* 26 Ind. App. 175, 59 N. E. 342; *McDearmid v. Foster,* 14 Or. 417, 12 Pac. 813; *McDaugall v. Crapon,* 95 N. C. 292. It is essential to the existence of an equitable lien arising from express contract that the property charged be so described that it can be identified. (*Chattanooga Nat. Bank v. Rome Iron Co.,* 102 Fed. 755; *Union Trust Co. v. Trumbull,* 137 Ill. 146, 27 N. E. 24; *Harned v. Mutual Life Ins. Co.,* 21 Ky. Law Rep. 750, 53 S. W. 27; *Mundy v. Munson,* 40 Hun (N. Y.), 304.) An intention to create a change on the property described must be clearly apparent. (*Wright v. Ellison,* 1 Wall. (U. S.) 16, 17 L. ed. 555; *Arnold v. Porter,* 122 N. C. 242, 29 S. E. 414; *Bowen v. McCarthy,* 127 Ill. 17, 18

N. E. 757; *Rider v. Clark,* 54 Iowa, 292, 6 N. W. 271.) "A condition in a contract of sale that the title to the property is not to vest in the vendee until the performance of some act by him as a condition precedent to the passing of the title may be waived by the vendor, and when so waived, the property will vest in the vendee, notwithstanding he has not performed the conditions." (6 Am. & Eng. Ency. of Law, 474; *Holt Mfg. Co. v. Ewing,* 109 Cal. 353, 42 Pac. 435; *Fowler v. Bowery Sav. Bank,* 113 N. Y. 450, 10 Am. St. Rep. 489, 21 N. E. 172, 4 L. R. A. 145; *Smith v. Dennie,* 6 Pick. 262, 17 Am. Dec. 368; *Green v. Bennett,* 23 Mich. 464; *Hibernia Ins. Co. v. O'Connor,* 29 Mich. 241; *West v. Platt,* 127 Mass. 367; *Oester v. Sitlington,* 115 Mo. 247, 21 S. W. 820.) "The waiver may be expressed or implied from the acts of the parties." (*State v. Green Tree Brewery Co.,* 32 Mo. App. 276.)

George W. Tannahill, for Respondent.

The only question for consideration in this case is, Can a contract for the sale of goods be made whereby title remains in the seller, and the seller attach on the note or contract? This question has been considered by this court and passed upon so that there can be no mistake as to the law in such cases. We call attention to *Willman v. Friedman,* 3 Idaho, 734, 35 Pac. 37: "Where W. sold F. certain real estate upon executory contract, F. going into possession, but title remaining in W. until purchase price is paid by vendee, vendor has such a lien as bars him from resorting to attachment, under the statutes of Idaho, for the recovery of unpaid portion of purchase price." (Idaho Rev. Stats., secs. 1887-4303; Idaho Code, secs. 1901, 3294, and notes; *Murphy v. Montandon et al.,* 3 Idaho, 325, 29 Pac. 852; *Hill v. Grigsby et al.,* 32 Cal. 56-59; *Vollmer v. Spencer,* 5 Idaho, 557, 51 Pac. 608, 609; *Fisk v. French,* 114 Cal. 400, 46 Pac. 161.) We call special attention to *Harkness v. Russel & Co.,* 118 U. S. 663, 7 Sup. Ct. Rep. 51, 30 L. ed. 285.

STOCKSLAGER, J.—This case is here for review on appeal from an order of the district court, Nez Perce county, dissolving and discharging an attachment.

We gather the following facts from the records: On the second day of July, 1901, respondent executed and delivered to appellants the following promissory note:

"Lewiston, Idaho, July 2nd, 1901.

"No. ———.

"For value received, on or before the 1st day of Oct. 1901, I promise to pay to the order of Mark Means Transfer Co., of Lewiston, Idaho, at Lewiston, Idaho, in gold coin, $110.00, one hundred ten no-100 dollars with interest at ten per cent. per annum from date until paid.

"If suit is brought on this note I also promise to pay a reasonable amount of attorney's fees to the holder of this note. The makers and endorsers consent that suit may be brought on this note before any justice of the peace to the amount of $300. The express condition of the sale and purchase of goods for which this note is given is such that the title, ownership or possession does not pass from the said Mark Means Transfer Co. until this note is paid in full, and that the said Mark Means Transfer Co. have full power to declare this note due and take possession of the goods at any time he may deem himself insecure, even before the specified maturity of same. Given for ———.

"ALEX MACKINZIE."

On the fourth day of August, 1902, appellants filed their complaint in the district court of Nez Perce county, demanding payment, etc.

On the fifteenth day of August, 1902, a writ of attachment was issued by the clerk of the district court of Nez Perce county and delivered to the sheriff of said county for service, and on the nineteenth day of August, 1902, the sheriff executed said writ by levying upon certain property of respondent, to wit, one McCormick binder, fifteen tons of grain-hay, five acres of growing onions, and an undivided one-third interest in and to one hundred and eighteen acres of growing flax, all on the farm of respondent in said county of Nez Perce, and placed a keeper in charge of the property attached. The attachment was issued, based upon the affidavit of James Hayes, who, with Mark

Means, constitutes the firm of Mark Means Transfer Company. The affidavit follows:

## "AFFIDAVIT FOR ATTACHMENT.

"James Hayes, being first duly sworn, deposes and says that he is one of the plaintiffs named in the above-entitled action, and that he makes this affidavit for himself and copartner, Mark Means; that the above-named defendant is indebted to said plaintiffs in the sum of one hundred and ten dollars ($110), with interest thereon, at the rate of (10) per cent per annum, from the second day of July, 1901, and the further sum of twenty-five dollars ($25.00) attorney's fees, over and above all legal setoffs and counterclaims, upon a contract for the direct payment of money, to wit, upon a promissory note, dated July 2, 1901, for the sum of one hundred and ten dollars ($110), with interest at ten (10) per cent per annum, from date thereof, payable on or before the first day of October, 1901, and providing for the payment of a reasonable sum as attorneys' fees in case suit or action is instituted to collect the same, or any part thereof, and that the sum of $25 is a reasonable attorney's fee herein; and that the payment of said sums or either of them or any part thereof has not been secured by any mortgage or lien upon real or personal property or any pledge of personal property.

"That this attachment is not sought and this action is not prosecuted to hinder, delay or defraud any creditor or creditors of said defendant.

"JAMES HAYES.

"Subscribed and sworn to before me this 15th day of August, 1902.

"P. E. STOOKEY,
"Clerk District Court."

Thereafter respondent gave notice of his intention to ask the court to discharge the attachment on a day certain fixed in the notice on the ground "that the attachment was issued in violation of subdivision 1 of section 4303, Revised Statutes of Idaho, in this: That the note sued on in this action is a title note, is and was secured by the machinery and property on which

the note was given, and that no proceedings have been had to exhaust said security."

In support of this motion the affidavit of Alex Mackinzie, respondent, was filed. Subdivision 1 of section 4303 says: "That the defendant is indebted to the plaintiff, specifying the amount of such indebtedness over and above all legal setoffs or counterclaims, and whether upon a judgment or upon a contract for the direct payment of money and that the payment of the same has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or if originally secured, that such security has, without any act of the plaintiff, or the person to whom the security was given become valueless, etc."

The affidavit of respondent says: "That said note was given for one McCormick binder, was a title note, and under the conditions of the note, agreement and contract, and the express conditions of the sale and purchase of the goods for which said note was given it was stipulated and agreed that the title, ownership or possession of said property does not pass from the said Mark Means Transfer Company until the note is paid in full, and that the said Mark Means Transfer Company has full power to declare the said note due and take possession of the goods at any time they may deem themselves insecure, even before the specified maturity of the same; that there has been no action or proceeding for the purpose of exhausting said pledged property, and the same is in existence at the present time, and that the said note is and was at the time this action was commenced, secured, and that said security has not been exhausted."

In opposition to this motion the joint affidavit of Mark Means and James Hayes was filed, and each for himself says: "That it is not true that there was any agreement or contract that the ownership or possession of the goods and articles for which the note sued upon was given should remain in plaintiffs; that the note was given only to evidence the indebtedness of Mackinzie to plaintiffs for a McCormick binder, some binding twine and other articles which were sold and delivered by plaintiffs to said Mackinzie on the second day of July, 1901. That at the

time said note was executed and delivered by defendant to plaintiffs, plaintiffs delivered possession of said binder, binding twine, etc., and have not had possession of them or either of them since."

The affidavit denies that there was any contract or under-. standing between plaintiffs, or either of them, and defendant, that plaintiffs should have a lien upon said binder, and that the question of lien, ownership or possession of said binder or other property was not discussed etc.

That on the second day of July, 1901, defendant appeared at the business place of plaintiffs in the city of Lewiston, and proposed to purchase of them said binder and other personal property, which in all amounted to the sum of $110, provided plaintiffs would wait upon him until the first day of October, 1901, for said sum. That plaintiffs accepted said proposition and then and there delivered said goods to defendant, and then and there the defendant, without any further agreement, contract or discussion, executed and delivered to plaintiffs the promissory note set out in the complaint in this action. .

This constitutes the record before us and the record before the district court upon which the order was made on the eighth day of November, 1902, forever quashing and discharging the attachment.

It is urged by counsel for appellants that the order of the district court does not state on what ground the attachment was quashed and discharged. Counsel for respondent replies that the order was prepared by counsel for appellants, and he should not be heard to complain if the order is defective in this particular. Be this as it may, the order does discharge and quash the attachment, and the application for its discharge is based upon the ground that under the provisions of subdivision 1 of section 4303 of the Revised Statutes, the plaintiff cannot have an attachment, for the reason that the terms and conditions of the note created a lien on the property sold by appellants to respondent, and further that no effort has been made by appellants to exhaust the property covered by such lien before the attachment proceedings.

It is further urged by counsel for appellants that the statute of this state does not provide for a lien of the kind and character shown by the note which is set out *haec verba* in the statement of the facts in the opinion, and further urge that a pen was drawn through the blanks left for description of the property, which would and did destroy the lien if the statute does authorize such a one as contemplated by the promissory note in question.

Counsel for appellants also urge that there are but two kinds of liens of personal property, viz., a chattel mortgage and a pledge; that it is not a pledge because possession of the property was not delivered to or retained by appellants.

In support of his contention that appellants had a lien on the machinery sold to respondent by them by reason of the terms of the note, counsel for respondent cites *William v. Friedman,* 3 Idaho, 734, 35 Pac. 37, decided by this court. He quotes the following language from that opinion: "Where W. sold to F. certain real estate upon executory contract, F. going into possession but title remaining in W. until purchase price is paid by vendee, vendor has such a lien as bars him from resorting to attachment under the statutes of Idaho for the recovery of unpaid portion of purchase price."

Does a reservation of the title in the vendor create such a lien in his favor as to disbar him from invoking the remedy by attachment under our statutes? Why was the title to this real estate reserved in the plaintiff? Defendant went into possession under the contract and made partial payments of the purchase price. If the reservation of title in the plaintiff was not for the purpose of security, we cannot imagine what it was for. If it was not a vendor's lien in the strict sense of that term, it was security by lien upon real estate, and while it continued to exist constituted a bar to the issuance of an attachment under the provisions of section 4303, Revised Statutes of Idaho, unless it had, without any act of the plaintiff or the person to whom the security was given, become valueless.

The case of *Harkness v. Russell,* reported in 118 U. S. 663, 7 Sup. Ct. Rep. 51, 30 L. ed. 285, is very interesting and

instructive on the question of sales of the character before us. The opinion is by Mr. Justice Bradley, and reviews the decisions of many of the American courts. The opinion closes in this language: "It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho to prevent in this case the operation of the general rule, which we consider to be established by overwhelming authority, namely, that in the absence of fraud an agreement for a conditional sale is good and valid as well against third persons as against the parties to the transaction; and the further rule that a bailee of personal property cannot convey the title or subject it to execution for his own debts until the condition on which the agreement to sell was made has been performed."

Our attention is also called to *Barrett v. Pritchard,* 2 Pick. 512, 13 Am. Dec. 449; 1 Benjamin on Sales, 3d Eng. ed., sec. 334.

*Payne v. Bensley,* 8 Cal. 260, 68 Am. Dec. 318, in support of the proposition that the condition of the note created such a lien on the machinery as precludes the appellants from attachment proceedings until the property conveyed by the lien had been exhausted, or that it was shown by the affidavit for attachment that the property, through no fault of plaintiffs, could not be reached or had become valueless. We have carefully examined the authorities cited by counsel for appellant, but do not think they apply to the case at bar.

There is a conflict in the evidence as to what was said between the parties at the time of the sale of the machinery, but there is no dispute as to the language of the note, its terms and conditions, and the district judge having passed upon the evidence before him, we think his conclusions were justified and should not be disturbed.

We do not attach particular importance to the fact that a line was drawn through the blank space in the note for a description of the property. The language of the note creates the lien on the property sold and a description of it was not essential. We think appellants could have taken the machinery from respondent under the terms of the note, disposed of it in

any manner they saw fit, and respondent could not be heard to complain.

Order affirmed with costs to respondent.

Sullivan, C. J., and Ailshie, J., concur.

ON PETITION FOR REHEARING.

(July 29, 1903.)

Per CURIAM.—Attorneys for appellants have filed a very interesting and able petition for rehearing in this case, but after consideration of the reasons urged and the authorities cited in support thereof we feel it our duty to adhere to the conclusions announced in the opinion originally filed herein.

Appellants contend that since the sale was conditional and the title was, by the terms of the contract, not to vest in the vendee until full payment should be made, the vendor could waive the conditions and thereby vest title in the vendee, and that the commencement of an action to recover the purchase price was an implied waiver of such conditions. This proposition seems to be fully supported by the authorities to which we are cited by the appellants. (2 Benjamin on Sales, p. 550; Tiffany on Sales, p. 158; *Holt Mfg. Co. v. Ewing,* 109 Cal. 353, 42 Pac. 435; *Detroit etc. Co. v. Stevens,* 16 Utah, 177, 52 Pac. 379; *Fowler v. Bowery Sav. Bank,* 113 N. Y. 450, 10 Am. St. Rep. 489, 21 N. E. 172, 4 L. R. A. 145; *Park & Lacy Co. v. White River Lumber Co.,* 101 Cal. 37, 35 Pac. 442; *Smith v. Barber,* 153 Ind. 322, 53 N. E. 1014; *Bailey v. Hervey,* 135 Mass. 174.)

Upon principle a vendor who sells personal property, reserving in himself the title and right of possession, should be deemed to have waived his right to repossess himself of the property whenever he commences an action for the recovery of the purchase price. The reservation of title is a protection for the vendor alone, and enables him to pursue the property in case the purchase price shall not be paid when due. This right he may forego if he chooses to do so. The vendee, on the other hand, has unqualifiedly obligated himself to pay the purchase price, and has likewise agreed that the title to the property

shall remain in the vendor as security for the amount unpaid. There is nothing for the vendee to waive, and he can suffer no injury by reason of any waiver made by his creditor. Certainly a vendor could not recover a judgment for the purchase price of his goods and still retain the title to the goods and right to recover them.

The question here presented is, Can the vendor, after commencing his action for a recovery of the balance of the purchase price have an attachment issued thereon against the property of the vendee? Section 4303, Revised Statutes, requires the plaintiff to make and file an affidavit with the clerk before he can have a writ of attachment issued, and it is there required, *inter alia,* that the affidavit shall set forth; "that the payment of the same has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or if originally secured, that such security has without any act of the plaintiff, or the person to whom the security was given, become valueless." Keeping this statute in view, was the debt originally secured? And if so, had the security become valueless without any act of the plaintiff? The debt was, so far as defendant is concerned, unalterably and unqualifiedly contracted when the conditional sale contract was entered into and at that time the plaintiff contracted with defendant for the right to retake the property. This right was undoubtedly a "security" to the plaintiffs. When they waived the conditions of the sale and passed title to the defendant they certainly waived this security by their own act. We do not see how a creditor can make the required affidavit under these conditions, unless, in fact, the property has been destroyed, consumed, worn out, or otherwise become "valueless without any act of plaintiff."

It is urged by appellants that they had no "security" for their debt as contemplated by our statute. That it was not a mortgage, and was not a lien, and not a pledge.

It occurs to us that plaintiffs' security was a higher class of security than either a mortgage, lien or pledge; it was a reservation of the title itself with a right to take possession at any time condition should be broken. Here the creditor held a se-

curity for the sum owed him from his debtor which did not require any of the processes of law to devest the title. All that was. necessary for him to do in order to realize on his security was to obtain possession of the property. This we think clearly a security within both the letter and spirit of the attachment statute *supra,* and that the plaintiff could not abandon such security because, perchance, he preferred an attachment lien to the security he already had.

A rehearing is denied.