390 P.2d 831

Herman A. HEINRICH and L. Alice Heinrich, husband and wife, Plaintiffs-Appellants,

v.

I. C. BARLOW and Myrtie F. Barlow, husband and wife, and Rodney L. Beus and Sarah Beus, husband and wife, and The Barlow Company, an Oregon corporation, and the unknown heirs and devisees of any of the foregoing Defendants who may be deceased and to all other persons claiming any right, title, estate, lien or interest in the following described property situate in the County of Valley, State of Idaho, to-wit: Lots Three (3) and Four (4) the South Half of the Northwest Quarter (S½ NW¼) and the West Half of the Southeast Quarter (W½ S.E.¼) of Section Four (4) in Township 17 North, Range Three, East Boise Meridian, containing 235.36 acres more or less, together with all water, water rights, ditches and flumes thereunto belonging or in anywise appertaining, Defendants-Respondents.

No. 9342.

Supreme Court of Idaho.

March 24, 1964.

Robert H. Remaklus, Cascade, Calvin Dworshak, Boise, for appellants.

Millar & Callister, Boise, for respondents.

KNUDSON, Chief Justice.

Under date of September 16, 1960, Herman A. Heinrich and L. Alice Heinrich, husband and wife, plaintiffs-appellants, as vendors, entered into a contract to sell to defendants-respondents, I. C. Barlow and Rodney Beus, for the sum of $65,000, real and personal property consisting of a ranch and the farming machinery and equipment situate thereon.

Under the terms of said contract the purchasers were to receive credit on said con-

tract for the sum of $15,000 by performance of the following:

(1) Endorse and deliver to vendors a certain promissory note executed by Tom and Kimi Kamo in the principal sum of $7500 and assign to vendors the real estate mortgage securing said note;

(2) Assign and deliver to vendors a certain Class A stock certificate of the Baker Production Credit Association in the face value of $5000, subject to certain rights of redemption within two years;

(3) Pay to vendors the sum of $2500 together with accrued interest on or before March 1, 1961.

The remaining balance of $50,000 was payable in annual installments of $5000 each.

A warranty deed to the real property and title insurance policies, together with a bill of sale to the personal property and certain fire insurance policies, were to be delivered to the escrowholder, by whom said instruments were to be delivered to the purchasers only upon full compliance with the terms of said contract.

Prior to June 1961 the parties were notified that the Baker Production Credit Association would not permit assignment to the vendors of the Class A stock certificate

referred to in the contract. Thereafter and under date of June 9, 1961, the parties executed an agreement (hereinafter referred to as a modification agreement), whereby it was mutually agreed that in lieu of assigning and delivering to the vendors the said Class A stock certificate the purchasers caused two promissory notes to be executed and delivered to the vendors, one dated April 10, 1961 for $2500, due May 10, 1962; and the other dated April 10, 1961 for $2500, due May 10, 1963. Each of said notes was executed by Rodney L. Beus and by Barlow Company, Inc., signed by I. C. Barlow as president and Truman F. Barlow as secretary.

On or about August 10, 1962, appellants executed and caused to be served upon the purchasers a written "Notice of Intention to Declare Forfeiture", specifying therein claimed defaults of the purchasers under the contract.

On September 27, 1962, appellants commenced this action, alleging five separate claims for relief.

Under the first claim appellants seek to quiet their title in and to the property described in the contract as against respondents.

By the second claim appellants asked judgment against respondents for damages in the sum of $11,380 and interest.

Under the third and fourth claims appellants allege default in the payment of the principal and interest under the two $2500 notes, hereinbefore described as being dated April 10, 1961.

Under their fifth claim appellants seek a writ of injunction restraining respondents from removing any of the personal property described in the contract.

Upon the filing of the complaint appellant Herman A. Heinrich filed his affidavit for attachment, stating in substance that the defendants, The Barlow Company, Inc. and Rodney L. Beus, were indebted to plaintiffs upon two contracts for the direct payment of money, to-wit:

(here follows a description of the two promissory notes set out and referred to in the third and fourth claims in their complaint.)

The undertaking for attachment was regularly filed and a writ of attachment issued on October 2, 1962. Pursuant to said writ the sheriff of Valley County attached personal property belonging to said last-named defendants.

On October 5, 1962, the defendants-respondents moved to dissolve the attachment upon the ground that a lien existed for the amount of said notes upon the real and personal property described in the contract. The trial court granted said motion and entered its order discharging the attach-

ment, from which order this appeal is taken.

Under the assignments of error it is contended that the court erred in ordering the attachment to be vacated and discharged. The question here presented is whether, under the circumstances existing at the time of the issuance of the writ, the obligation evidenced by the promissory notes described in the affidavit for attachment, were secured within the meaning of I. C. §§ 8–501, 8–502. The pertinent portions of said sections are:

"8–501. The plaintiff at the time of the issuing of summons, or at any time afterwards may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment as in this chapter provided in the following cases.

"1. In an action upon a judgment, or upon contract, express or implied, for the direct payment of money, where the contract is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property; or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless."

"8–502. The clerk of the court must issue the writ of attachment upon receiving an affidavit by or on behalf of plaintiff setting forth:

"1. That the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all legal set-offs or counterclaims) and whether upon a judgment or upon a contract for the direct payment of money, and that the payment of the same has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or if originally secured, that such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless."

Whether the obligation was or was not secured turns upon the terms of the contracts between the parties. There is no express provision in the contract reserving title in appellants as security for the payment of the purchase price. However, the record clearly demonstrates that such was the intention of the parties.

Attached to the complaint and by reference made a part thereof are true copies of the "Contract of Sale of Real and Personal Property" (Ex. A) and the "Modification of Contract of Sale of Real & Personal Property" (Ex. B).

In this connection a pertinent portion of said contract provides:

"*Escrow.* IT IS FURTHER AGREED That concurrently with the

execution of this Agreement the Sellers shall execute a Warranty Deed to said real property hereinabove described and a Bill of Sale to said personal property conveying the same to Buyers, free and clear of all liens and encumbrances, except the taxes and assessments for the year 1960, which Deed, Bill of Sale, Title Insurance Policy hereinafter referred to and fire insurance policy or polices hereinabove referred to, shall be delivered to the McCall Branch of the Idaho First National Bank at McCall, Idaho, as Escrow Holder and said Escrow Holder shall be instructed to deliver the same to the order of the Buyers upon full compliance with the terms hereof and affix to said Deed the necessary revenue stamps and charge the Sellers therefor, but in the event of the default of the Buyers in the performance of any of the covenants and agreements herein contained, including any of said payments as herein provided, to return the same to Sellers."

In providing for remedies the contract provides in substance that should the purchasers default in any of the covenants thereby imposed upon them, the vendors may declare a forfeiture of the contract and the purchasers shall forfeit all rights under the contract, including all rights to retain possession or use of the property, or any part thereof.

This language of the contract permits of no construction other than that it was an executory contract of sale and that the title remained in the vendors until there had been full compliance on the part of the purchasers.

The Modification Agreement (Ex. B) was executed by all parties to the original contract of sale and bears date the 9th day of June, 1961. Under its provisions reference is made to the fact that it had been determined that the purchasers could not assign the stock certificate as provided in the original contract and the parties agree that the contract be modified to substitute the notes here involved in lieu of the stock certificate. The pertinent provisions of said Modification Agreement are as follows:

"1. That in lieu of the signing and delivering to Sellers said Class A stock certificate of the Baker Production Credit Association, the Buyers have caused the following promissory notes of the Barlow Company, Inc., and Rodney L. Beus to be executed and delivered to Buyers, to-wit:

"Note dated April 10, 1961, for $2,-500.00 with interest at the rate of 6% per annum, due and payable May 1, 1962;

"Note dated April 10, 1961, for $2,-500.00 with interest at the rate of

6% per annum, due and payable May 10, 1963;

which said notes the Sellers do hereby accept in lieu of the assignment of said stock certificate."

"3. That the promissory notes of the Barlow Company, Inc., and Rodney L. Beus hereinabove described, shall be deposited in The Idaho First National Bank, at McCall, Idaho, in escrow with the other documents in connection with said contract and said notes together with the interest thereon, shall be paid at said bank.

"4. That a copy of the Modification of Contract of Sale of Real and Personal Property shall be deposited in escrow with the Idaho First National Bank, McCall, Idaho, in connection with and in addition to said Contract of Sale of Real and Personal Property.

"5. That the balance of said purchase price in the sum of $50,000.00 together with interest as provided in said contract, and together with said promissory notes and said mortgage are owing to Sellers.

"6. That the failure by the Barlow Company and/or Rodney L. Beus to pay either or both of the notes hereinabove set forth upon the due date thereof together with interest as therein provided shall constitute a breach of said contract of sale for which a forfeiture may be declared.

"7. That the said Contract of Sale of Real and Personal Property dated September 16, 1960, by and between the parties hereto shall be and remain in full force and effect, save and except as specifically hereby modified.

"This modification shall be binding upon the heirs, executors, administrators and assigns of the respective parties hereto."

The language of said Modification Agreement clearly establishes that it was the intention of the parties that the two promissory notes represented part of the purchase money for the property described in the contract and that the obligations evidenced by the notes were in fact among and a part of the obligations under the contract; that default in the payment of either would constitute a breach of the contract to the same extent as a failure on the part of the purchasers to perform any other of the obligations on their part to be performed under the contract. The payment of the notes, when due, became an obligation of the purchasers to the same extent as any other payment provided for by the contract notwithstanding the fact that the makers of the notes were not the identical purchasers under the contract.

In their endeavor to establish that they were entitled to the attachment here involved and that they had no vendor's lien on the property being sold, appellants argue that "It was the security ostensibly offered by reason of having The Barlow Company, a corporation, as a co-maker upon both notes which induced the Plaintiffs to accept the notes as part payment of the purchase price." Appellants do not point out or call our attention to any portion of the record which supports the statement that appellants accepted the notes as part payment of the purchase price. In fact, the following quoted argument contained on page 6 of appellants' brief in effect refutes such statement, to-wit:

"The payment of $2,500.00, together with certain off-sets and credits on interest arranged between Plaintiffs and the Defendants, I. C. Barlow and Rodney L. Beus was paid March 1, 1961. With the exception of certain payments made by Tom Kamo and Kimi Kamo on the promissory note executed by them to The Barlow Company as hereinabove set forth, *this is the first and only money that Plaintiffs have received on the said downpayment provided for in the said contract of sale,* and this sum was paid by The Barlow Company to Plaintiffs. The money was not paid by I. C. Barlow or Rodney

L. Beus personally." [Emphasis supplied.]

The Modification Agreement specifically provides that failure to pay the notes, or either of them, "shall constitute a breach of said contract of sale for which a forfeiture may be declared", such language clearly refutes any contention that the notes were accepted as part payment on the contract. The execution of the notes was not a "payment" on the original $65,000.00 obligation, but only a written promise to make a payment of a different nature in lieu of the delivery of the stock certificate.

Appellants have devoted a substantial portion of their brief to argument and citations supporting their contention that they did not, at the time of the attachment, have a vendor's lien on the property described in the contract. With this contention we agree. I. C. § 45–801 provides:

"One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer."

Such lien is founded upon the presumption that where the vendor has parted with his title and taken no security for the payment of the purchase price, the parties intended that the property itself should remain as a pledge for the payment of the purchase price

of the land; it is personal to the vendor and does not pass by a transfer of his claim for the purchase money. In the instant case appellants did not part with the title to the property sold, hence no vendor's lien is involved.

Appellants state that the record shows all of the defendants in the action were nonresidents of Idaho, and argue that even if the court concluded appellants have a vendor's lien, such fact is immaterial because the nonresidency of defendants makes inapplicable subsection 1 of §§ 8–501 and 8–502. There is no merit to this contention. If appellants were relying upon the nonresidency of the defendants as authority for the attachment, such facts must be stated in the affidavit (see subsection 2 of § 8–502). The affidavit here concerned does not contain such statement.

Having concluded that the original contract of sale here considered was an executory contract under which the title remained in the vendors, we will now consider the question as to whether appellants, at the time of the attachment, were secured within the meaning of I. C. §§ 8–501, 8–502.

█ █ The remedy by attachment is purely statutory and summary and a party must, in order to have the benefit of this statutory process do everything required by the authorizing statutes. The claim, therefore, must be one founded upon a contract for the direct payment of money, the payment of which has not been secured in any degree by any of the means specified in the statute. If it has been so secured, however inadequately, attachment cannot issue, unless such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless. Farmers' State Bank of Star v. Gray, 36 Idaho 49, 210 P. 1006. One of the early cases in which the nature of the security held by a vendor under a like contract is discussed is Gessner v. Palmater, 89 Cal. 89, 24 P. 608, 26 P. 789, 13 L.R.A. 187, wherein the court stated:

* * * "Where the vendor holds the legal title under an unexecuted contract for the conveyance of the land upon payment of the purchase money, the transaction shows upon its face that he holds it as security. The vendee cannot prejudice that title, or in any way divest it, except by performance of the act for which the vendor holds it. The vendor's security is something stronger than a mortgage, because the legal title is retained as security. * * Where the title is not to pass until the vendee pays the purchase price, the land is by express contract held in pledge for such payment, and the notes and contract may be considered as an instrument in the nature of a mortgage." * * *

In the case before us the trial court sustained a motion to dissolve the attachment upon the authority of the decision of this court in Willman v. Friedman, 3 Idaho 734, 35 P. 37, from which the following quote is taken:

"There appears in the record what is denominated a 'memoranda of agreement,' made and entered into between plaintiff and defendant * * * by the terms of which plaintiff, for a consideration therein expressed, agrees to sell and convey to defendant certain real estate in the town of Hailey, Alturas county, Idaho, for the sum of $4,500, to be paid in five installments of $900 each, at various dates, with interest. It is further agreed that the title papers for said real estate shall be deposited in escrow with the First National Bank of Hailey, Idaho, to be delivered by said bank to said defendant upon and after performance by him of the matters and things by him to be performed, as provided in said memoranda of agreement. The five promissory notes for $900 each, mentioned and set forth in the complaint, were the consideration for said real estate. Under this agreement, defendant went into possession of the real estate described in the complaint. The question, and about the only one, discussed in this case, is: 'Does the reservation of title in the vendor create such a lien in his favor as to disbar him from invoking the remedy by attachment under our statute?' Why was the title to this real estate reserved in the plaintiff? Defendant went into possession under the contract, and made partial payments of the purchase price. If the reservation of title in the plaintiff was not for the purpose of security, we cannot imagine what it was for. If it was not a 'vendor's lien,' in the strict sense of that term, it was security by lien upon real estate, and, while it continued to exist, constituted a bar to the issuance of an attachment, under the provisions of section 4303, Rev.St. Idaho [I. C. § 8–502], 'unless it had, without any act of the plaintiff, or the person to whom the security was given, become valueless.'"

The rule announced in said Willman case is cited and quoted with approval by this court in the case of Mark Means Transfer Co. v. Mackinzie, 9 Idaho 165, 73 P. 135, wherein an attachment was sought in an action for a recovery of the balance of the purchase price under a title retaining contract, and the court said:

"It is urged by appellants that they had no 'security' for their debt as contemplated by our statute; that it was not a mortgage, and was not a lien, and not a pledge.

"It occurs to us that plaintiffs' security was a higher class of security than either a mortgage, lien or pledge; it was a reservation of the title itself, with a right to take possession at any time condition should be broken. Here the creditor held a security for the sum owed him from his debtor which did not require any of the processes of law to devest the title. All that was necessary for him to do in order to realize on his security was to obtain possession of the property. This we think clearly a security within both the letter and spirit of the attachment statute, supra, and that the plaintiff could not abandon such security, because, perchance, he preferred an attachment lien to the security he already had."

See also: Barton v. Groseclose, 11 Idaho 227, 81 P. 623; Birkeland v. Clearwater Concentrating Co., 64 Idaho 122; 127 P.2d 1047.

In Richvale Land Co. v. Johnson, 28 Cal. App. 296, 152 P. 312, the court had under consideration a motion and order to discharge an attachment similar to the ones we are here considering, and the court, in construing statutes almost identical to ours, and in affirming the order, stated:

"Plaintiff, in retaining the title until all payments are made, has security for the payment of the purchase price at least equal to that of a vendor's lien or mortgage."

In each of the following cited cases the court had under consideration a like question wherein almost identical statutes were involved. In Title Guaranty & Trust Co. v. Stahler, 15 Cal.App.2d 239, 59 P.2d 515, the court stated:

"The first point urged upon this appeal is that the court erred in refusing to vacate this attachment. In that appellant is correct. The vendor, under an executory contract for the sale of real property, having retained title as security for the purchase price, is not entitled to an attachment."

In Lencioni v. Dan, 128 Cal.App.2d 105, 275 P.2d 101, the court said:

"The law is well settled that a seller under an executory contract for the sale of real property who retains title until all payments are made as security for the payment of the purchase price, has security which prevents him from obtaining an attachment in a legal or equitable action to recover the unpaid balance on the contract."

In Fraser v. Clark, 129 Mont. 56, 282 P.2d 459, the court was considering a contract which, like in this case, did not contain

an express provision reserving title, but provided that sufficient deed and abstract should be deposited in escrow, for delivery upon purchasers' complete compliance, and that in case of purchasers' noncompliance, deed and abstract should be returned for cancellation and contract, at vendors' option, should become null and void and vendor entitled to possession of property. The court held that:

> "Such provisions of the contract clearly provided a remedy for and security to the vendors for a breach thereof and under the provisions of R.C.M.1947, § 93–4301, precluded a rightful attachment and seizure of defendants' personal property in an action upon the contract upon which this suit was brought."

■ We therefore conclude that the contract here involved was an executory contract of sale under the terms of which appellants retained title as security for the payment of the purchase price. This being so, the contract was one expressly providing for security within the meaning of I.C. §§ 8–501, 8–502, and the attachment was properly discharged. The order appealed from is affirmed. Costs to respondents.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.