CARTER, APPELLANT, *v.* BANKERS' INSURANCE CO.,
RESPONDENT.

(No. 4,647.) ·

(Submitted September 13, 1920. Decided October 2, 1920.)

[192 Pac. 827.]

*Attachment — Hail Insurance Policies — Not Contracts for Direct Payment of Money.*

1. *Held,* that an action to recover damages, unliquidated in character, under hail insurance policies, under one of which a total loss of crops was asserted and under the others of which only partial losses were alleged, was not one upon contracts for the direct payment of money, within the meaning of section 6656, Revised Codes, and that therefore an attachment issued at the commencement of the action was properly dissolved.
    [As to risk covered by hail insurance policy, see notes in 7 A. L. R. 373; Ann. Cas. 1917D, 81.]

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

ACTION by George Carter against the Bankers' Insurance Company. From an order dissolving an attachment plaintiff appeals. Affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief, and one in reply to that of Respondent; *Mr. William Scallon* argued the cause orally.

The ruling of the court below was based on the decision of this court in the case of *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197. We submit, as our first proposition, that the contracts sued on in this case comply with the requirements of the rule stated in that case.

Although the obligation of the defendant may have been contingent at first, it had become absolute by the happening of the contingency and the making of proofs. There was, of course, a contingency at the time of the issuance of the pol-

icy, as there must be in all contracts for insurance. But, the contingency intended to be provided against had happened. Loss had occurred. The conditions of the policies had been complied with by the insured. The liability of the company had, therefore, become absolute and unconditional. The suit is based, not alone upon the contracts as they were at the time of the issuance of the policy, but upon the contracts and the obligations of the defendant as they existed at the time of the bringing of the suit.

It is not requisite that all of the terms of a contract should be fixed and agreed upon at the time of the making of the contract in order to justify an attachment. If it were otherwise, no attachment could issue upon an implied contract. Merchants' bills for goods sold, without an express agreement as to price would not justify attachment. Yet, the statute expressly says that attachments may issue upon contracts, express or implied. Even implied contracts may be for the "direct payment of money." That also is a necessary consequence of the provision of the statute. The statute, in effect, says so. It would be equivalent to a repeal of the statute to say that implied contracts are not within its purview merely because the amount of money to be paid was not expressly fixed.

It does not seem deniable that a merchant's claim for goods sold and delivered will support an attachment; and if it can, surely these contracts will. The contracts, as sued on, make out a stronger showing of contracts for the direct payment of money than a merchant's claim such as we are now speaking about.

They are more nearly analogous to an account stated, because even the amount of money to be paid had become fixed and definite, and was known to each party before suit brought.

Even at the outset and before the occurrence of the loss, these policies were more explicit and certain than implied contracts such as we are speaking about. The amount to be

paid in case of a total loss is expressly stated. The prices to be allowed for the grain saved in case of a partial loss are specified. The number of bushels threshed is established by the proofs furnished under the policy. It is a mere matter of computation then to determine the amount due. Everything necessary for the determination of the amount is provided for.

"That is certain which can be made certain." (Civ. Code, sec. 6206.) This rule was applied in Colorado in the case of *Stuyvesant* v. *Western Mortgage & I. Co.*, 22 Colo. 28, 43 Pac. 144, wherein a party upon buying a piece of property had accepted a deed in which it was stated that the purchaser assumed a mortgage on the premises without giving the name of the mortgagee or the amount. The court there held that an attachment could issue against the grantee in such a case, and distinguished it from that of *Hurd* v. *McClellan*, 14 Colo. 213, 23 Pac. 792, referred to by this court in the *Sparrow Case.*

The complaint, therefore, shows, in each instance, a contractual obligation direct from the defendant to the plaintiff to pay a sum of money definite and certain in amount, and then positively due.

It is held in California, as well as in Montana, that a claim for damages for failure to deliver property agreed to be sold and delivered will not sustain an attachment. In that respect, California and Montana are in accord. (*Willett* v. *Alpert* (Cal.), 185 Pac. 976; *Beartooth Stock Co.* v. *Grosscup*, 57 Mont. 595, 189 Pac. 773.) If it be contended that the sentence occurring in *Sparrow Case,* on page 138, of 29 Mont., to-wit, "The contracts now contemplated by section 890, above, are such only as require the payment unconditionally and absolutely of a definite sum," excludes all contracts in which all these matters are not positively and definitely expressed at the outset, our reply will be that the words quoted cannot be held to mean that; or, if they may, then, as we have said, that the words ought to be qualified. We say that they ought

not to be held to mean that, because, if they did, they would. mean that no attachment could issue upon an implied contract, and that, as we have said, would repeal the statute. The words ought to be held to mean that the contract, as sued upon, must be unconditional and absolute, and the liability under it must be for a sum of money definite, or one which can be made definite by reference to the contract, or by proof referable and pursuant to the terms of the contract itself. This would be in accord with the words of the statute. It would also conform to decisions in other states having a similar statute. (*Ross* v. *Gold Ridge Min. Co.*, 14 Idaho, 687, 95 Pac. 821; *De Leonis* v. *Etchepare*, 120 Cal. 407, 52 Pac. 718.)

It is not necessary that the contract itself should show the amount due. (*Kohler* v. *Agassiz*, 99 Cal. 9, 33 Pac. 741; *De Leonis* v. *Etchepare, supra.*)

*Mr. Henry C. Smith*, for Respondent, submitted a brief, and argued the cause orally.

The respondent relies, for affirmance, upon the reasoning of this court in the case of *Ancient Order of Hibernians* v. *Sparrow*, 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197, as supplemented by the case of *Beartooth Stock Co.* v. *Grosscup*, 57 Mont. 595, 189 Pac. 773. The learned district judge who made the order in the *Beartooth Stock Company Case* also made the order in this case. He could see no distinguishing feature, in principle, between the two cases. In fact there cannot be any. Counsel for the appellant fail, as it seems to us, to fully comprehend the meaning and purpose of this statute. The contract set forth in the complaint is not in any sense a contract "for the payment of money." This point has been lost sight of by the courts in many of the decided cases. We submit that the contracts contemplated by the various attachment statutes are those only, where the primary purpose of the contract is the payment of money. The basic purpose of this

contract is not the payment of money at all; it is protection to the insured, in certain contingencies. This statute contemplates an attachment on those contracts only, whether they are express or implied, which have for their fundamental purpose a promise to pay money. The decided cases, other than the two to which we have called the court's attention, have very little bearing upon this case. Whatever may have been decided in other states, we have a construction of our own, of this statute, in Montana; and we submit that, after all these years, after the law has become fixed ¡and settled, since this court has so clearly defined the meaning of the statute, and it has been acquiesced in, and acted upon, for so many years, it ought not to be changed, or restricted, or limited, by this court. If the people of the state are dissatisfied with it, of which there is not any evidence or suggestion, it is for the legislative branch of the government to amend it. That could easily be done by again striking out the word "direct," thus giving the statute in that one respect the meaning which appellant's counsel seem to contend for.

While we see no reason for selecting out "a merchant's claim for goods sold and delivered," as an example, as is done by the appellant, in his brief, still, we accept the challenge, and, among many which might be thought of, instance the case of a balance ascertained and account stated between the parties to such a transaction, wherein the law implies a promise to pay the balance found due. (See *Voight* v. *Brooks,* 19 Mont. 374, 48 Pac. 549.) On such a contract, which, while implied, is, in law, a direct unconditional promise to pay a liquidated amount of money, an attachment can undoubtedly be had. Such a contract is so conclusive upon the parties that the items of the original account cannot be inquired into, except for fraud, error or mistake. (*Martin* v. *Heinze,* 31 Mont. 68, 77 Pac. 427; *Stagg & Conrad* v. *St. Jean,* 29 Mont. 288, 74 Pac. 740; *Johnson* v. *Gallatin Valley Mill Co.,* 38 Mont. 83, 98 Pac. 883; *McFarland* v. *Cutter,* 1 Mont. 383.)

It is not necessary that there should be an express promise to pay a balance due, in order to convert an account into an account stated. Such promise may be implied by law from an adjustment of an account by the parties and the ascertainment or admission of a balance due from one of them; and evidence of the assent to the correctness of an account may, be found in circumstances from which such assent may be inferred; as where one party presents an account to another, which the latter retains without making objection. (1 Cyc. 375.) So that the merchants, to whom appellant's counsel refers, need have no fear or apprehension growing out of the construction this court has placed upon the statute. This statute is designed to protect not only the creditor but the debtor; an account stated, which is based on contract, express or implied, and overdue, is properly the subject of an attachment. Or, as this court said in the *Sparrow Case:* "The contract [must] require the payment unconditionally and absolutely of a definite sum."

A promissory note is such a contract; and so is a grocery account stated. But we submit that the action of the legislative assembly in 1895, in again placing the word "direct" in the statute clearly evidences an intention to deny the drastic privilege of attachment to a party who simply claims that his neighbor is indebted to him on "contract for the payment of money"; he must have something more than that, to warrant the seizure of the defendant's property (with attending costs and damages) prior to obtaining a judgment.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an appeal from an order made by the district court of Lewis and Clark county dissolving an attachment. The complaint contains five causes of action, each of which alleges a breach by defendant of a contract of insurance against damage or destruction of growing crops due to hail, drought, hot winds or any other cause, except fire or flood. One of the

several policies was issued by defendant to plaintiff and a co-owner, the interest of the latter having been assigned to the plaintiff after the loss is alleged to have occurred. The others were issued to four other persons, who also assigned their several interests to the plaintiff. All of the causes of action are substantially the same, except that the first is for a total loss, while the others are for partial losses.

The complaint alleges compliance by the original holders of the policies with all the terms thereof, and that the crops covered by them were either damaged or wholly destroyed by drought and hot winds during the term for which they were issued. It alleges, further, that the defendant's adjuster investigated the losses and accepted the proof of them as sufficient under the requirements of the policies in this behalf. The policies are identical, except as to the amounts claimed and the areas and descriptions of the lands upon which the crops were growing. Each of the policies designates the number of acres in crops covered by it, and fixes the maximum amount which the defendant binds itself to pay for a total loss at $7 per acre. It contains a provision that in case of a partial loss the quantities of any grain harvested must be valued at the rates therein specified, and the amounts deducted from the maximum amounts fixed for a total loss. This provision is as follows: "That in the event of a partial loss of said crop the amount of damage shall be determined by computing the value of the crop remaining by the following values of each grain, *viz.*: Wheat, one dollar per bushel; flax, one and 75/100 dollars per bushel; rye, seventy cents per bushel; oats, barley and speltz, fifty cents per bushel; and the damage thereto shall be the difference between the amount for which said crop is insured and the value obtained as herein provided." Aside from this provision, the policies are of the same general form as other insurance policies.

The attachment was issued by the clerk after the commencement of the action, upon plaintiff's filing the affidavit and [1] undertaking required by the statute. The district court

sustained the motion for dissolution of it, on the ground that an insurance policy is not a contract for the "direct payment of money," within the meaning of section 6656 of our Revised Codes. Whether it reached the correct conclusion is the only question presented to this court.

Counsel for the plaintiff contend that the contracts in question come clearly within the statute as interpreted by this court in *Ancient Order of Hibernians* v. *Sparrow*, 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197, and hence that the order must be reversed. This contention cannot be maintained. As we understand counsel, they proceed upon the idea that, though the obligation assumed by the defendant under the terms of each policy was contingent at the time it was issued, since, at the commencement of the action, the contingency had happened—that is, the loss had occurred—and all the conditions to· be performed by the plaintiff had been met, as alleged in the complaint, the obligation assumed by defendant had become absolute and unconditional. In other words, the right of the plaintiff to the writ in any case is to be determined, not by the character of the obligation as expressed in the contract, but by what the plaintiff alleges has occurred thereafter, without reference to the issues presented by the pleadings. In the case stated, this court, speaking through Mr. Justice Holloway, after assigning to the term "direct" the meaning "immediate; express, unambiguous; confessed; absolute"—as it is defined in Webster's Dictionary, pointed out that it must have been inserted in the statute by the legislature to distinguish a particular class of contracts for the payment of money from all other contracts for the payment of money, thus limiting the scope of the statute to the particular class. The court said: "Before 1895 an attachment could be had in every action upon a contract, express or implied, for the payment of money, where the debt was not secured. Since then the writ can only issue in those cases arising on contracts, express or implied, for the direct payment of money, and, applying the definitions of the term

'direct' as given above, the obvious intention of the legislature can be made plain. The contracts now contemplated by section 890 [Rev. Codes, sec. 6656] above, are such only as require the payment unconditionally and absolutely of a definite sum." The contract considered in that case was a bond executed by the defendants as sureties of one White conditioned that they would indemnify the plaintiff against any loss which it might suffer by reason of the failure of White to erect a building for it according to certain plans and specifications. The obligation assumed by the sureties, besides being conditional, was to pay, not an ascertained, liquidated amount, but an amount to be measured by the extent of the loss the plaintiff had suffered, which could be determined only by a trial.

It is true that the contract considered in the *Sparrow Case* was collateral to the main or building contract, which did not call for the payment of money to effect its discharge, but for the erection of the building. Nevertheless the obligation assumed by the sureties was to compensate the plaintiff for the damage suffered by it by reason of the default of White, not to exceed the amount of the penalty mentioned in the bond. The amount of the penalty served only to fix a limit beyond which the sureties could not be held liable, and, though the complaint charged that plaintiff had suffered a loss amounting to a definite sum, the amount for which the sureties could finally be held was to be determined by a judicial solution of the questions: "Did White in fact violate the principal contract?" and "What damage, if any, did plaintiff suffer?" The action was, therefore, not for a sum fixed or ascertainable from the terms of the contract and to be paid in any event, but for an unliquidated sum. So here the amount stated in each of the several policies to cover a total loss merely served to limit the amount for which the defendant could be held liable in any event, leaving the amount to be paid by it to be fixed by the court or jury under the issues presented to the pleadings. Assuming that the defendant puts in issue the allegations of the complaint, whether the loss is alleged to be total or partial, it is incumbent upon the

plaintiff to establish by his evidence that each of his several assignors was the owner of the crops covered by his policy, that they were growing on the lands described in the policy held by him, that a loss had occurred, that the cause of the loss was one or more of the causes named in the policy, that the insured had performed the conditions on his part to be performed, and that he had assigned his interest to the plaintiff. Thus it appears that the policies fall into the class of those contracts which are excluded by the statute as interpreted in the *Sparrow Case.* The causes of action predicated upon them are for unliquidated damages, to be ascertained by the court or jury, and therefore they do not arise upon contracts for the direct payment of money. In this respect the policies are not distinguishable from the bond considered in the *Sparrow Case.*

Counsel argue that, if the conclusion announced in the *Sparrow Case* excludes these contracts from the class designated in the statute, it should be modified, or the result is that implied contracts such as merchants' accounts, expressly included by the statute, are to be deemed excluded. It may be that the rule as therein stated is open to the criticism of it made by counsel. It is a sufficient answer to this contention, however, to say that, if the rule is to be modified, this may be properly done in a case when the necessity arises. It does not arise in this case. However it may hereafter be modified, it seems clear that the legislature, in enacting the statute, did not intend to authorize an attachment in actions such as this, to recover unliquidated damages arising out of breaches of contract. This was expressly held in the case of *Beartooth Stock Co.* v. *Grosscup,* 57 Mont. 595, 189 Pac. 773, and we see no reason to recede from the conclusion there stated.

The order is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY, MATTHEWS and COOPER concur.