[Civ. No. 16064.   First Dist., Div. One.   Oct. 18, 1954.]

GEORGE LENCIONI et al., Respondents, v. ALBERT DAN, SR., et al., Appellants.

. Langer & Simpson and Russell P. Clarke for Appellants.

Phil F. Garvey for Respondents.

PETERS, P. J.—Plaintiffs, entitling their complaint one for "specific performance," brought an action to compel performance by defendants of their written agreement to pay the purchase price of certain real and personal property. The prayer of the complaint is that defendants be compelled to specifically perform in accordance with their written agreement, which is set forth as an exhibit to the complaint, that

plaintiffs have judgment for $32,500,* which was the portion of the $42,000 purchase price defendants had agreed to pay in cash, and that, if specific performance cannot be granted, plaintiffs recover $2,000, the amount of the commission paid to a broker. The plaintiffs secured from the clerk of the court the issuance of a writ of attachment for $15,000 upon the filing of the required affidavit and undertaking, and levied upon two parcels of real property owned by defendants and which were parcels not involved in the contract of sale.

Defendants moved to dissolve the attachment. The motion was denied. Defendants appeal on the clerk's transcript. The order is an appealable one. (Code Civ. Proc., § 963, subd. 2; *Lohr* v. *Superior Court,* 111 Cal.App.2d 231 [244 P.2d 5].)

The sole contention made by appellants is that the attachment should not have issued because the respondents were secured creditors within the meaning of section 537, subdivision 1, of the Code of Civil Procedure. Respondents urge that this point was not presented in the notice of motion, was not before the trial court and cannot be considered on this appeal; that, in any event, the obligation was not secured within the meaning of the section; and that if originally secured, such security was waived. It is also contended that the contract included the sale and purchase of personalty, and that this destroys the lien constituting the security, if any existed.

### Was the Issue as to Whether the Obligation Sued on Was Secured Before the Trial Court?

The notice of motion to discharge the attachment stated that the motion would be made on the following grounds:

"(1) That the cause of action is an equitable one for specific performance and is not one in which a writ of attachment could issue.

"(2) That the writ of attachment was improperly issued, among reasons for which is that the gravamen of the action is an equitable one seeking specific performance of a contract and one in which no liquidated damages could be determined short of a trial of the action. The contract mentioned in the complaint is for the sale of real property, not a contract

---

*The full purchase price was $42,000, of which $500 was paid on the execution of the contract, and defendants agreed to pay $32,500 within 30 days, the balance of $9,500 to be carried by plaintiffs as a second loan to be paid in installments.

for the direct .payment of money within the meaning of the law.

"(3) That the writ of attachment was irregularly issued; that the complaint asks for $34,500 and the affidavit for the writ of attachment states $15,000 is due, yet liquidated damages are not specified.

"(4) The affidavit for issuance of writ of attachment is false for reasons above stated."

Respondents contend that under this notice of motion appellants did not urge that the obligation sued upon was secured, and rely on the rule that a notice of motion must state the grounds upon which the motion is to be made (Code Civ. Proc., § 1010) and that the moving party is limited, in making the motion, to the grounds stated. ■ But the section does not require, at least where the other party, as here, does not object to the form of the notice, that the grounds must be stated with minute particularity. The question is simply one of interpretation—under the notice here involved could the appellants have urged in the trial court that no attachment would lie because the obligation was secured? It seems clear that they could. ■ The trial court had before it not only the notice of motion and its supporting points and authorities, but the complaint which contained the contract of sale as an exhibit, and the affidavit for the attachment. These it was required to consider in passing on the motion. (*Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 P. 780]; *Kohler* v. *Agassiz*, 99 Cal. 9 [33 P. 741].) ■ Certainly, under the notice of motion, the trial court was required to determine the nature of the cause of action, and in doing so necessarily would have to determine whether the obligation was secured or unsecured. The notice of motion alleged that motion would be made on the ground that the cause of action "is not one in which a writ of attachment could issue. . . . That the writ of attachment was improperly issued . . . That the writ of attachment was irregularly issued . . ." While there can be no doubt that the grounds alleged in the notice of motion werè primarily aimed at challenging the attachment on the ground that no attachment could issue in a specific performance action, and the points and authorities filed in support were almost entirely devoted to that issue, the notice, reasonably interpreted, also put into issue the much broader question of whether, under section 537, subdivision 1, of the Code of Civil Procedure, the attachment was barred for any reason set forth in that

section, including the fact that the obligation was secured. Whether this point was in fact urged before the trial court we have no way of knowing because the argument before the trial court is not before us.* But the point is that under the notice of motion the point could have been urged, and so may now be urged on this appeal.

*Was the Obligation Secured Within the Meaning of Section 537, Subdivision 1, of the Code of Civil Procedure?*

So far as pertinent here that section provides:

"The plaintiff . . . may have the property of the defendant attached . . .

"1. In an action upon a contract, express or implied, for the direct payment of money, where the contract is made or is payable in this State, and is not secured by any mortgage, deed of trust or lien upon real or personal property, or any pledge of personal property . . ."

The law is well settled that a seller under an executory contract for the sale of real property who retains title until all payments are made as security for the payment of the purchase price, has security which prevents him from obtaining an attachment in a legal or equitable action to recover the unpaid balance on the contract. (*Title Guar. & Trust Co.* v. *Stahler,* 15 Cal.App.2d 239 [59 P.2d 515]; see cases collected 5 Cal.Jur.2d 631, § 27.) The parties devote a considerable portion of their briefs to a discussion of whether respondent's action is one for specific performance or an action at law on the debt, but this point need not be discussed because, in either event, if the debt was secured, no attachment should have issued.

Whether the obligation was or was not secured turns upon the terms of the contract and the allegations of the complaint. There is no express provision in the contract reserving title in respondents as security for the payment of the purchase price, but the record demonstrates, beyond doubt, that such was the intention of the parties, and that such result necessarily follows from the allegations of the complaint, including the provisions of the contract set forth as an exhibit. The complaint alleges that respondents have performed all of the terms of the written agreement, and

---

*The points and authorities in support of the motion are before us. While they are almost entirely devoted to the claim that no attachment will issue in an equitable proceeding, a point now abandoned by appellants, section 537, subdivision 1, of the Code of Civil Procedure is cited, and was before the trial court.

stand ready, able and willing to convey title to appellants. Thus present title in respondents is inferred. The sales agreement is a "Uniform Agreement of Sale and Deposit Receipt" and amounts to a conditional sale of the property. It acknowledges the receipt of $500, for $27,000 to be raised on a first loan and to be paid to respondents, and $9,500 payable in installments to respondents. The appellants were given 30 days to examine title, and if no objections are reported "the balance of said purchase price shall be paid" before the 30 days to the escrow company "and said seller shall deliver to said office a properly executed and acknowledged deed of grant, bargain and sale of said property." In providing for remedies the seller is given rights of specific performance, of calling the sale off, of keeping the forfeited deposit, and of suing to enforce the payment of the balance. Such language clearly amounts to providing that the seller retains title until the purchase price is paid. The language used is quite similar to that involved in *Pickering Lbr. Corp.* v. *Whiteside*, 54 Cal. App.2d 200 [128 P.2d 899]. At page 206 the court stated: "It is very plain that the contract was an executory contract of sale, and that title remained in the vendor. The language of the contract permits of no other construction. It states: 'Vendors shall sell and convey to the purchaser, and the purchaser shall purchase from the vendors, for the price and upon the terms and conditions hereinafter set forth, the lands.' It also states: 'If the purchaser shall pay for said lands as herein provided, the vendors shall, and they covenant that they will make, execute and deliver to the .purchaser, a good and sufficient general warranty deed . . . conveying to the purchaser . . . title in fee simple to all of said lands.' It also states: 'When the purchaser has paid the entire purchase price as hereinabove provided . . . said bank shall deliver said deed to the purchaser.' Also, in providing for rights and remedies, in case of default by the purchaser, the contract states: 'The vendors may, without prejudice to their position or rights as owners of the property, make such bid.' These clauses, and other language employed throughout the instrument, indicate that the vendor has rights far beyond those of a mortgagee; for instance, 'specific performance,' 'to bid on the property, and in the event that no bid or bids are received from others, higher than the highest bid of the vendors . . . the vendors may call the sale off, credit the amount bid, and sue for a deficiency.' No such rights are given to a mortgagee. [Cases cited.] In

fact, the language of the instrument is so plain that it did not transfer title, that it requires no further citation of authority.''

It must be held, therefore, that the contract was an executory contract of sale under the terms of which respondents retained title as security for the payment of the purchase price. This being so, the contract was one expressly providing for security within the meaning of section 537, subdivision 1, of the Code of Civil Procedure, and the attachment should have been discharged.

### Have Respondents Waived Their Security?

Respondents insist that, if the obligation involved was originally secured, they have waived such security by bringing this action, which they urge is one at law on the debt. If it be assumed that one possessing security within the meaning of section 537, subdivision 1, can waive it so as to qualify for an attachment, a point subject to some doubt,* no such waiver here appears. Obviously, respondents retained title to the real property in question, have not conveyed it to appellants, and their security that prohibits an attachment adheres as an incident of such retention of title. There is no merit to this point.

### Did Respondents Have Security as to the Personal Property Involved?

Respondents point out that part of the property involved in the contract of sale was personal property, and that no segregation of selling price was made between the real property and the personal property. It is contended that if respondents are secured as to the real property, the security is in the nature of an implied vendor's lien, and that no such lien exists as to personal property where title and possession have passed. That is undoubtedly the law as to personal property. (Civ. Code, § 1773, subd. 1a; *Hougham*

---

*It is true that a seller retaining title may waive his security and sue at either law or equity. (*Amaranth Land Co.* v. *Corey,* 182 Cal. 66 [186 P. 765].) But we have been referred to no case and have found none holding that such a seller may thus become an unsecured creditor and secure an attachment to replace his waived security under section 537, subdivision 1, of the Code of Civil Procedure. The policy of the law is that a creditor holding security shall not resort to attachment until he has exhausted such security. (See discussion 5 Cal.Jur.2d 628, § 26.) Such policy, it could be argued, would be violated if a secured creditor were permitted at will to waive his security and then seek further security by way of attachment.

v. *Rowland*, 33 Cal.App.2d 11 [90 P.2d 860].) It is also undoubtedly the law that in a situation involving a combined sale of both realty and personalty for a gross consideration where title has passed to the buyer but the seller, by implication, would normally have an equitable lien on the realty, but would not have such a lien on the personalty because title and possession have passed, the effect of the blending of the considerations is to destroy the implied lien on the real property. (See annotation, 88 A.L.R. 92, 93.) ▇ But, as already pointed out, in the instant case, the security of the respondents as sellers of the real property is not that of an implied lien where title has passed to the appellants, but is based on terms of the contract under which title to the realty did not pass. Here we are dealing with what amounts to an express retention of title as security for the payment of the full purchase price. In such a situation, as contrasted with the implied equitable lien rule, in cases of a combined sale of realty and personalty, the security title to the realty retained by the seller acts as security for the full purchase price of both the realty and personalty. (See annotation, 88 A.L.R. 92, 101.)

The order denying the motion to discharge the attachment is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 15, 1954.